## Moore, &c. vs. Caruthers & Applegate.

#### APPEAL FROM SPENCER CIRCUIT.

Case 26.

Ord. Pet.

1. Where a contract is to perform work at a stipulated price, payable in installments, the completion of the work and its acceptance is not a condition precedent to payment, and an issue on that point in a suit for the price to be paid is immaterial. (*Gentry vs. Barnet*, 2 J. J. Mar., 320.)
2. In a suit for compensation for building a bridge, intended for public use, the fact that it was used by the public so soon as it was in a condition to be used, did not authorize a jury to infer that it had been accepted as built according to contract, especially when those bound to pay for it had expressly refused to receive it.
3. When a counter claim is relied upon, and there is an issue upon its validity, and an immaterial issue upon the plaintiffs' claim, the plaintiff cannot have judgment for his demand; but, if anything be found due to defendants on their counter claim, the plaintiffs' claim should be to that extent reduced, if the counter-claim exceed the plaintiffs' demand, the judgment should be for the defendant to the extent it may exceed the plaintiffs' demand.

Moore, &c.
*vs.*
Caruthers, &c.

[The facts of the case are stated in the opinion of the court.—Rep.]

*C. A. Wickliffe, M. D. McHenry,* and *J. Harlan* for appellants—

A verdict having been found for the plaintiff in this case for $3,759, the appellants moved the court to set it aside, and award a new trial on the following grounds, to-wit: 1. For errors in instructions given at the instance of plaintiffs. 2. For refusing to give instructions moved by defendants. 3. For modifying erroneously the instructions moved by defendants. 4. Because the verdict was contrary to law. 5. Because it was not sustained by the evidence. 6. In erroneously instructing the jury that the county court of Washington county had no power to make a contract for building a bridge across Chaplin at Beauchamp's mill.

The attention of this court is first called to the instructions. To the first there is no objection, provided the plaintiff was entitled to recover anything, which will be noticed hereafter. To the second we object entirely. It is in substance that though the jury may believe that this work was not completed according to the contract of the 19th July, 1852, yet if the jury believe the defendants accepted the bridge, and used it as a passway for twelve months, and until it was washed away by the flood, the law was for the plaintiffs for the contract price, or so much as remained unpaid. This was erroneous as the defendants were not the contracting parties, but only guarantors, and not liable until the failure of the county court, the principal. (*Reynolds vs. Douglass,* 12 *Pet.,* 497.) The commissioners had no power to accept the work. That belonged to the county court which had refused to accept it upon the report of its commissioners, whom it had appointed to inspect it. The court intended to apply a principle to this case, which is inapplicable—that is, that an acceptance is a waiver of any objection to any defect in perform-

ance, a principle not to be applied to work constructed upon the soil and attached to it. But there was no evidence conducing to prove acceptance, but the reverse, and for that reason also the instruction was erroneously given.

The issue which was tried by the jury was whether or not the plaintiffs had performed their contract in building the bridge. Evidence of acceptance was irrevelant and not to the point in issue. (*Wathen vs. Pennebaker*, 3 *Bibb*, 99.)

The third instruction should not have been given. It is based on the supposed acceptance of the bridge by the defendants, and the power of the county court of Washington to build the bridge without the concurrence of the Nelson county court, questions not involved in the issue before the jury and misleading and erroneous.

The defendants asked five instructions: the first, the counterpart of the first asked by the plaintiffs, which the court modified by attaching to it the condition of acceptance or non-acceptance, on which we have remarked. The second instruction was based upon the failure of the plaintiffs to construct the bridge upon the plan of the Taylorsville bridge, which was the improved plan of the plaintiff. This was refused. The improved plan was not specified or set out in the contract, and it was, therefore, competent to prove by parol what it was. (*Wigram on Extraneous Evidence*, 6 vol. *Law Lib.*, 210; 1 *Greenleaf Ev.*, 398; *Brown vs. Roland, Pr. Dec.*, 349; *Littell's Selected Cases*, 39.) If the facts supposed by this instruction existed, of which the jury were to judge and in consequence of defective construction and departure from the "improved plan" the bridge was swept away, the plaintiff should not recover on the contract.

The third instruction was to the effect that if by the contract the abutments were to be built twenty-five feet high and they were built of less height, and in consequence thereof the bridge was swept away

the plaintiff could not recover. This was also refused and we think erroneously.

The fourth instruction embraced, in substance, the matters of the second and third, and was refused as they were. The fifth was, in substance, that if on the day the bridge was finished the plaintiffs tendered it to defendants and they refused to accept it, and if they further believed that the bridge was built upon the plan and of the height agreed on, that the use of the bridge by the defendants and by the public did not amount to an acceptance either by defendants or the Washington county court; this was also refused.

In lieu of the five instructions moved by defendants the court told the jury "that what is meant by Caruthers & Applegate's new and improved plan is a question of fact to be ascertained and determined by all the proof in the cause." "That the use by the defendants of the bridge or by the public is not conclusive evidence of itself of acceptance, by the defendants, of the bridge, but may be weighed by the jury in connection with other proof in reference to that point." This modification is objected to by the defendants.

The evidence very satisfactorily proves the following propositions: 1. That the piers and abutments were only twenty-one feet high, instead of twenty-five. 2. That the stone work of abutments and piers was very badly done by negroes, none of whom had experience in the business except one, who had worked nine days. 3. That if the abutments and piers had been twenty-five feet high the bridge would probably have withstood the freshet of 1854, by which it was washed away. 4. That the commissioners, when the bridge was finished, positively refused to receive it because, as they alledged, it was not done according to contract, and never did receive it. 5. That the plaintiffs always regarded their contract as with the Washington county court, and the defendants only as guarantors for the per-

formance of the contract by that court.   6. That the bridge was to have been built according to the new and improved plan of the bridge at Taylorsville, and that it was not so built.   7. That the bridge was of no value whatever.

If the county court is not liable the guarantors are not liable.   "The guarantor cannot be liable to any greater extent than the original debtor, either in point of time or amount."   (*Parsons on Contracts*, vol. 1, page 502; 10 *Johnson*, 180; 3 *Cowen*, 151; 15 *Pet.*, 187.)

To authorize a recovery against the county court it was incumbent on the plaintiffs to prove performance of their contract.   The evidence falls entirely short of proving performance of the contract and they try to avoid the necessity of such proof by relying on acceptance by the defendants.   We contend in the first place that the acceptance must be by the county court which is to be regarded as the principal, acting in its official character for the local public. 2. There was no evidence conducing to show an acceptance of the bridge.   So far from it the county court refused to accept it.   3. We contend that the defendants had no power as individuals to accept or reject the work.   The bridge was intended for public use in passing and repassing.   The county court originated the project of building the bridge, and did not vest the defendants or either of them with the power of rejecting or receiving it.   But if such power had been given, the proof is clear that they never did receive it, but positively refused it, because it was not built according to contract.

*Grigsby & Newman* for appellees—

The contract is the contract of the defendants, not of the county court.   (*Story on Contracts*, sec. 858, page 950.)   The case was tried upon two issues:   1. That the work was done according to contract.   2. If not done according to contract, that it was accepted.   The main question was upon performance or

no performance, though the issue upon the counter claim of defendants was acceptance or non-acceptance. The jury found for the plaintiffs. It is now contended that there was no issue upon the question of acceptance and that the proof and instruction on that point was abstract and misleading.

At one time a party could not aver performance and prove acceptance, but this is not now the rule, you may aver performance and prove acceptance. (*O'Bannan vs. Relf*, 7 *Dana*, 320; *U. S. Digest*, 12 *vol.*, *page* 32; *Danville Bridge Co., vs. Pomeroy*, 15 *Penns. State Rep.*, 3 *Harris*, 151.) But the counter-claim was never withdrawn, It is a joint plea, the county court informally and irregularly uniting in the defense of a suit to which it was no party, and curing that irregularity by withdrawing only the counter-claim, so far as it was concerned left it in full force as to the real defendants. We contend that on either issue the proof was competent, and to these points the parties had directed their attention and evidence in both trials.

The modification of the instruction complained of was to the advantage of the plaintiffs in one view, and to their disadvantage in another. The court told the jury "that they must find, under the issue of acceptance, that the defendants in that acceptance, waived all claim to be compensated for any deficiency in the work." The court was doubtless induced to this caution by likening the case of the bridge to a structure placed in a man's yard on his own soil, whereas this work was placed in a public highway on a river, the exclusive possession of no one. This analogy did not exist, but the defendants cannot complain, as it was favorable to them.

Substantial justice has been done to the parties litigent, and the judgment should not be disturbed. (*Code of Practice, section* 187, and *Noel vs. Hudson*, 13 *B. Monroe*, 206.) And as to what influence the giving an abstract instruction in respect to the powers of the county court, see 14 *B. Monroe*, 14.

It is not presumed that these parties, all plain un-scientific men, intended to be very particular about a few inches in the height or length of the bridge, and that it is in this investigation a matter of any great consequence.

The testimony in regard to the construction evidently applies more to the outside appearance of neatness and finish than to the strength and adaptedness of the work to the purposes of a bridge. Cornish and others when examining the bridge did not have the contract and compare the work with it. They went there to examine and condemn the work, and they examined it in reference to its neatness, not its stability. The whole facts of the case were before the jury, and the jury found their verdict for the plaintiffs, and the circuit judge, who heard all the witnesses testify, approved their finding and rendered judgment.

The substantial justice of the case has been attained, and the matter should rest.

Chief Justice CRENSHAW delivered the opinion of the court:      January 12.

On the 19th day of June, 1852, W. H. Moore, John Moore and W. H. Jones, as commissioners of the county court of Washington, entered into a contract with Caruthers & Applegate for the construction and erection of a bridge of a designated description, at the price of $5,600, across Chapline river, on the road leading from Maxville to Bloomfield, at Beauchamp's old mill. This contract appears to have been reported to the Washington county court, and there filed, but it was neither ratified nor rejected.

On the 23d of the same month, the said Moores and Jones addressed to Caruthers and Applegate the following note, in substance:

"We send you a few lines to let you know that we want you to come and commence our bridge as soon as you can; we want to see the work under

head-way, and we will guarantee to you the money according to contract.

Yours, very respectfully,<br>
W. H. MOORE,<br>
W. H. JONES,<br>
JOHN MOORE."

And, on the 1st day of July, 1852, Wade H. Moore, and Joseph Neal executed to Caruthers & Applegate the following obligation:

"Whereas, John Moore, Wade H. Moore and Wilson H. Jones, as commissioners appointed by the county court of Washington, have made a contract for the building of a bridge on the road leading from Maxville to Bloomfield, across Chapline river at Beauchamp's old mill, with Caruthers & Applegate, and the said Caruthers & Applegate not feeling willing to commence the work under the present order of said court, we, the undersigned, agree to become individually bound for the payment of five thousand six hundred dollars for the building of said bridge in the same way and time, as set forward in said contract, viz: Sixteen hundred and sixty-six dollars to be paid on the 1st day of October next; nineteen hundred an sixty-seven dollars to be paid on the first day of October, 1853; and the balance, nineteen hundred and sixty-seven dollars, payable the first day of October, 1854. Witness our hands this 1st July, 1852. WADE H. MOORE,

JOSEPH NEAL."

Caruthers & Applegate, on the 4th day of April, 1855, instituted suit against John Moore, Wade H. Moore, Wilson H. Jones and Joseph Neal, in which they set forth, at large, said contracts and letter of request, averring that the county court of Washington not having ratified the contract made with their commissioners, and made it binding on themselves, they did not intend to do anything towards the building of the bridge, until competent persons were bound for the payment of the work, and averring that Wade H. Moore, John Moore and W. H. Jones, by

virtue of said letter of request, of 23d of June, 1852, bound themselves, individually, to guarantee the payment to the plaintiffs. They also aver that, as further inducement and as further guaranty to the plaintiffs for the payment of the work, the defendants, W. H. Moore and Joseph Neal, executed and delivered to them the said obligation of July 1st, 1852. The plaintiffs then aver that they had built the bridge according to their contract, and had done and performed all things which they had undertaken to do and perform, and they pray judgment against the defendants for what remained due for building the bridge, and which the defendants had refused to pay, &c.

The defendants, together with the county court of Washington, who united with them in their defense, filed their answer and counter-claim, denying that the bridge had been built according to the contract, but that the plaintiffs had failed to do so in every particular, stating that they had paid the plaintiffs the sum of $1,666 and upwards and that, by reason of the plaintiffs' failure to comply with their contract, the defendants had sustained damages to the amount of $6,000.

The plaintiffs filed a replication to the answer and counter-claim of the defendants, acknowledging the payment of said sum of $1,666 and upwards, and reiterate the averments that the bridge had been built according to contract, and aver that the defendants accepted the bridge, and that they and the community, at large, used the bridge for —— months after its completion and before it was washed away. The county court, who had irregularly and improperly united in the defense, afterwards withdrew from the cause.

The issue, and only issue, upon the petition, was performance or non-performance, on the part of the plaintiffs, of the stipulations made by them to build a bridge of the specified dimensions, &c. This was the only inquiry upon the petition. The plaintiffs,

1. Where a contract is to perform work at a stipulated price, payable in installments, the completion of the work and its acceptance is not a condition precedent to payment, and an issue on that point in a suit for the price to be paid is immaterial. (*Gentry vs. Burnet*, 2 *J. J. Marshall*, 320.)

in their petition, did not aver, or rely upon, a waiver of defective construction by the defendants, and an acceptance of the bridge by them, but they relied upon performance.

Now the contract of June 19, 1852, bound the plaintiffs to build a bridge of particular dimensions, and of a particular description, but fixed no time for the completion thereof; and the money to be paid to the plaintiffs, was to be paid in installments, the first installment to be paid on the first day of October, 1852; the second, on the first day of October, 1853; and the third, on the first day of October, 1854. The payment of the money, nor any installment thereof, was made to depend upon the performance of the work, or completion of the bridge. The payment of the money was not dependent upon, but independent of, performance on the part of the plaintiffs. And the other undertakings on the part of the defendants, as manifested by the letter of request of June 23d, 1852, and the contract of July 1st, 1852, refer to the original contract, and agree to be bound for the money as therein stipulated. No alteration is made, by these subsequent undertakings, in the original contract, rendering the obligation of the defendants to pay the money, dependant upon *performance*. These subsequent obligations may be regarded as *dependent* upon the *commencement* of the work, but not upon the *performance* or *completion* thereof, they were entered into to procure the *commencement* of the work, but defendants were to make payment at the times, and in the manner provided for in the original contract of June 19th, 1852. It was, therefore, unnecessary for the plaintiffs to aver *performance*, in order to maintain their action for the money, and the issue formed on this averment was immaterial. (*Gentry vs. Barnett*, 2 *J. J. Mar.*, 320.)

The only material issue was that formed on the counter-claim, setting up a right to damage for the alledged failure of the plaintiffs to build such a bridge as they had undertaken to build. The reply to the counter-

claim not only avers *performance*, but an *acceptance* of the bridge after it had been finished.   According to the issue, thus made by the replication, it devolved upon the plaintiffs to prove to the satisfaction of the jury, either that they had erected such a bridge as they undertook to erect, or that the defendants accepted it, *sub modo* or absolutely.

According to the testimony in the record, upon the subject of acceptance, we are of opinion that there was no sufficient evidence of acceptance to authorize the jury to conclude that the bridge had been accepted, either *sub modo*, or absolutely, waiving all objections to insufficiency or defectiveness of construction.   It is manifest that the bridge was designed for public use and convenience, notwithstanding a few private individuals undertook to pay for its construction, and, after it was erected, whether it had been done according to the requirements of the contract or not, it was natural for the defendants and the community to open roads to it and use it, if it would answer the purpose of a bridge at all, without any intention whatever on the part of the defendants, to waive any defectiveness of construction, and to accept the bridge as built according to contract—nor did the payment of a part of the contract price, after the bridge had been erected, strengthen the testimony upon the subject of acceptance—the defendants, as we have seen, had agreed to pay the money, relying upon the undertaking of the plaintiffs to build the bridge of specified dimensions, strength and finish, and had not made the completion of the job according to contract, a condition precedent to the payment of the money.   Besides, although the bridge may not have conformed to the contract in the opinion of the defendants, they may have esteemed it as worth something to themselves and the community, and have been willing to pay something, and have conceived themselves bound to pay something, if not upon the contract, upon a *quantum valebat*.   It is difficult to see how there could well be an

MOORE, &c.
*vs.*
CARUTHERS, &c.

2. In a suit for compensation for building a bridge, intended for public use, the fact that it was used by the public so soon as it was in a condition to be used, did not authorize a jury to infer that it had been accepted as built according to contract, especially when those bound to pay for it had expressly refused to receive it.

*implied* acceptance of such a work as this, it was not, and could not be wholly appropriated to the use of the defendants, and they and the community would as naturally use, and travel over it, and open roads to it for their convenience, as if it had been accepted. In this case, however, there was an *express* refusal to accept, and, considering that express refusal, there was certainly no testimony from which the jury were authorized to infer that there had been an acceptance, and the instructions upon this subject were inappropriate and improper.

It has been seen that we regard the defendants as individually bound upon their contracts, not that we regard the two Moores and Jones individually bound upon the original contract. We do not decide whether they are not, but, by the subsequent agreements, they became bound to pay the money as stipulated for in that contract. It is true that the Moores and Jones in their letter of request to Caruthers & Applegate to commence the work, say that they will "*guarantee*" the money according to contract, and, from the employment of the term "*guarantee*," it has been argued, that they did not intend to be *directly* bound, but bound only to see that others should pay the money. It is not necessary to labor this subject, as we think it clear that the undertaking was direct, and was intended to impose upon themselves a direct obligation to pay the money, this is the sense in which they used the term "*guarantee*."

There was no error, in our opinion, in the refusal of the court to allow the amended answer to be filed, which averred that Caruthers & Applegate, at the time the original contract was entered into, when inquired of and asked what Caruthers' & Applegate's improved plan of building bridges was, pointed to the bridge at Taylorsville, as built upon that plan. The contract bound the plaintiffs to build the bridge according to Caruthers' & Applegate's late improved plan, and there was no utility in setting up the fact in the pleadings, that the plaintiffs point-

ed to the Taylorsville bridge as being on that plan; upon the issue of performance or no performance, the question of what was that plan, was involved in the issue, and was a matter of inquiry, the fact that the plaintiffs, themselves, said that the Taylorsville bridge was built upon that plan was testimony of a strong character that such was the fact. Whether the bridge which is the subject of controversy, was built upon the late improved plan of Caruthers & Applegate was a matter of fact to be ascertained by the jury.

It might be concluded that, inasmuch as the issue formed upon the petition was immaterial, the plaintiffs would be entitled to a judgment as for want of a sufficient answer thereto, but not so according to the Code, as we understand its provisions, until a trial by the jury upon the issue formed upon the counter-claim. If, upon the trial of this issue, the jury should find damages in favor of the defendants to an amount equal to the demands of the plaintiffs, the finding should be in favor of the defendants, and if they should find damages of a less amount than the demands of the plaintiffs, they should give credit for this amount, and find for the plaintiffs the remainder. But if the defendants should, in the opinion of the jury, be entitled to nothing, then the plaintiffs should have judgment for their whole claim.

It is not necessary, after what we have said, to notice the instructions in detail. We have shown that the judgment will have to be reversed, and the principles which we have laid down will be sufficiently obvious upon another trial.

The judgment is reversed, and the cause remanded for a new trial and further proceedings not inconsistent with this opinion.

MOORE, &c.
*vs.*
CARUTHERS, &c.

3. When a counter-claim is relied upon, and there is an issue upon its validity and an immaterial issue upon the plaintiffs' claim, the plaintiff cannot have judgment for his demand; but if anything be found due to defendants on their counter-claim, the plaintiffs' claim should be to that extent reduced, if the counter-claim exceed the plaintiffs' demand, the judgment should be for the defendant to the extent it may exceed the plaintiffs' demand.